IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUALITY BUILDERS WARRANTY CORPORATION,   Plaintiff | : : : : |
| v. | : CIVIL NO. 1:CV-10-2500 |
| EASTWOOD CONSTRUCTION CO., INC. and EASTWOOD HOMES, INC.,   Defendants | : : : : |

*M E M O R A N D U M*

I. *Introduction*

This is a breach-of-contract action brought by plaintiff, Quality Builders Warranty Corporation (QBW), against defendants, Eastwood Construction Co., Inc., and Eastwood Homes, Inc. Plaintiff filed it in state court, and it was removed here on the basis of our diversity jurisdiction.

Defendants are in the business of building new homes. Plaintiff provides warranty service for new-home builders, and it made separate agreements with each defendant to provide warranty service on their new homes. QBW alleges that Defendants breached the agreements by attempting to terminate them.

We are considering Defendants' motion for judgment on the pleadings, which argues that they terminated the agreements in accordance with their terms and hence Plaintiff has no claim for breach of contract. Under Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for

judgment on the pleadings." To be successful on a Rule 12(c) motion, the moving party must establish that "'no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir. 2008)(quoted case omitted). "'[W]e must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.'" *Id.* (quoted case omitted)(brackets added). In deciding the motion, we may also consider documents attached to the complaint. *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32-33 (3d Cir. 2011).

With this standard in mind, we set forth the allegations in the pleadings in the light most favorable to Plaintiff.

II.   *Background*

A.   *Count I: Breach-of-Contract Claim Against Eastwood Construction*

Plaintiff QBW is a "Pennsylvania corporation engaged in the Ten-Year New Home Warranty business." (Doc. 1, Compl. ¶ 1). Defendant Eastwood Construction is North Carolina corporation engaged in the construction of new homes. (*Id.* ¶ 3).

Effective July 1, 1997, Plaintiff and Eastwood Construction entered into a Builder Agreement pursuant to which Eastwood Construction became a member of Plaintiff's new-home warranty program. (*Id.* ¶¶ 5-6 and Ex. 1, the Agreement). Under the Agreement, Eastwood Construction had to enroll in the warranty program all of the new homes that it built while the agreement was in effect. (Compl., Ex. 1, the

Agreement, § B, ¶ 1, CM/ECF p. 14). The Agreement had no fixed term. It "continue[d] until terminated by either party in accordance with the terms of this agreement." (Doc. 1, Compl., § A, ¶ 6, CM/ECF p. 14). Eastwood Construction could terminate the Agreement "upon 30 days advance written notice to QBW." (*Id.*, § B, ¶ 6, last unmarked paragraph, CM/ECF p. 15).

Eastwood Construction paid a warranty rate of $1.65 per $1,000 of the sale price of each new home. (Doc. 1, Compl. ¶ 8). In May 2003, Defendant contacted QBW in an attempt to reduce the rate. The parties agreed that the rate would be reduced to $1.15 in return for Defendant's "commitment to maintain its membership in the QBW program." (*Id.*). Accordingly, on May 15, 2003, the parties executed an Amendment to the Agreement. In pertinent part, the Amendment modified the Agreement as follows:

> 1. Builder [Eastwood Construction] shall maintain its membership in QBW's Limited Warranty Program for an additional period of three (3) years to commence upon the below date [May 15, 2003] and submit for enrollment homes which Builder or any affiliate constructs during that time. Builder may not terminate his participation in the QBW Program within that period unless consented to by QBW in writing.
>
> 2. Builder's rate will be lowered to $1.15 per thousand. The rate will remain in effect for the period of this Amendment. The Amendment will renew for a like term, unless thirty (30) days prior to the expiration of this term or any extensions either party provides the other thirty (30) days advance written notice that they intend not to extend the period entitling the Builder to a lower rate. If Builder provides notice, QBW will adjust the Builder's rate upward effective at the end of the then current term.
>
> . . . .

>     4.  If the terms contained in this Amendment are
> inconsistent with the Builder Agreement, the terms of this
> Amendment shall govern.

(Doc. 1, Compl., Ex. 2, "Amendment to Builder Agreement," CM/ECF p. 18).

On or about November 1, 2010, Eastwood Construction sent QBW a letter, stating that Eastwood Construction was terminating the Agreement as of December 31, 2010. (*Id.*, Ex. 3, CM/ECF p. 19). Plaintiff alleges the termination violated the Agreement because under the Amendment the Agreement renews for three-year periods unless one party gives thirty days' notice before the expiration of each three-year term.[1] In part, Plaintiff seeks as damages the fees due for the new homes Eastwood Construction failed to enroll in the program.

B.  *Count II: Breach-of-Contract Claim Against Eastwood Homes*

Eastwood Homes is a North Carolina corporation engaged in the construction of new homes. (*Id.* ¶ 4). Effective December 13, 2005, Plaintiff and Eastwood Homes entered into a Builder Agreement and an Addendum (the Addendum being part of the Agreement) pursuant to which Eastwood Homes became a member of Plaintiff's new-home warranty program. (Doc. 1, Compl. ¶ 21, and Ex. 4, Agreement with Addendum). The Agreement required Eastwood Homes to enroll in the warranty program all of the new homes that it built while the agreement was in effect. (Compl., Ex. 4, the Agreement, § B, ¶ 1, CM/ECF p. 20). Viewed by itself, the Agreement had no

---

[1] Based on Plaintiff's position, the termination letter was sent during the third three-year term, due to expire on May 15, 2012.

fixed term. It "continue[d] until terminated by either party in accordance with the terms of this agreement." (Doc. 1, Compl., Ex. 4, § A, ¶ 6, CM/ECF p. 20). Eastwood Homes could terminate the Agreement "upon 30 days advance written notice to QBW." (*Id.*, § B, ¶ 6, last unmarked paragraph, CM/ECF p. 21).

The Addendum to the Builder Agreement, physically part of the Agreement, changed that. In pertinent part, it amended the Agreement as follows:

> In consideration for receiving a reduced rate, Builder agrees to maintain its membership in the QBW program for a period of 3 years to commence on the date this Addendum is executed by QBW. Builder agrees to submit for enrollment all homes which Builder or any affiliate constructs during this term and any extensions. In exchange, Builder's rate will be $1.15 per thousand. The Addendum will renew for like terms unless (30) days prior to the expiration of the term, or any extensions, either party provides the other (30) days advance written notice that they intend not to extend the period entitling the builder to a lower rate. If Builder provides notice, QBW will adjust the Builder's rate upward effective at the end of the then current term.

(Doc. 1, Compl., Ex. 4, CM/ECF p. 23).

On or about November 1, 2010, by way of the same letter sent by Eastwood Construction, Eastwood Homes notified Plaintiff that it was terminating the Agreement as of December 31, 2010. Plaintiff makes the same allegations against Eastwood Homes as it did against Eastwood Construction. The termination violated the Agreement because under the Addendum the Agreement renews for three-year periods unless one party gives thirty days' notice before the expiration of each three-year term, and Eastwood Homes was attempting to terminate the Agreement in the middle of a

three-year term.  In part, Plaintiff seeks as damages the fees due for the new homes Eastwood Homes failed to enroll in the program.

III.   *Discussion*

   A.  *The Breach-of-Contract Claim Against Eastwood Construction*

Eastwood Construction argues that the Agreement and Amendment are clear and unambiguous and that the contractual language permitted it to terminate the Agreement on thirty-days notice at the time it did so.  Relying solely on paragraph 1 of the Amendment, according to Eastwood Construction, the only effect the Amendment had on the Agreement was: (1) to establish for the first time a definite term for the Agreement, a three-year term running from the date the Amendment was executed, May 15, 2003, until May 15, 2006.  During this initial period, Eastwood Construction could not terminate the Agreement.  After this initial three-year term, however, Eastwood Construction's right to terminate the Agreement upon thirty-days written notice pursuant to § B, ¶ 6 of the Agreement was unaffected by the Amendment.  Hence, Defendant did not breach the Agreement when it gave written notice on November 1, 2010, that it would be terminating it on December 31, 2010, which was not just thirty-days notice, but sixty-days notice.

Plaintiff argues that Defendant's interpretation of the Amendment ignores paragraph 2, which governs renewal of the Agreement.  In pertinent part, that paragraph provides that the "Amendment will renew for a like term, unless thirty (30) days prior to

the expiration of this term or any extensions either party provides the other thirty (30) days advance written notice that they intend not to extend the period entitling the Builder to a lower rate." Plaintiff contends that this language means that the Agreement does not just have an initial three-year term, but renews for successive three-year terms, unless the party seeking to terminate sends thirty-days notice before the end of any particular three-year term. Renewal of the Amendment means renewal of paragraph 1 of the Amendment, which creates a three-year term for the Agreement. Hence, Defendant breached the Agreement when it attempted on November 1, 2010, to terminate it as of December 31, 2010. At that point, the Agreement had renewed for a third three-year term on May 15, 2009, to end on May 15, 2012. Plaintiff adds that paragraph 4 of the Amendment provides that the terms of the Amendment govern over inconsistent terms in the Agreement.

Both parties agree this action is controlled by Pennsylvania law. Under Pennsylvania law, if a contract is clear and unambiguous, its meaning is determined from the language of the agreement alone. *See Lesko v. Frankford Hospital-Bucks Cnty.*, __ Pa. __, __, 15 A.3d 337, 342 (2011). All provisions of the contract are construed together and each will be given effect. *Id.*

Under these principles of Pennsylvania contract law, we cannot grant Eastwood Construction judgment on the pleadings. We have to agree with QBW that Defendants' interpretation of the Amendment ignores paragraph 2, which deals with renewal of the Agreement, and that Plaintiff provides the better interpretation. We start

with paragraph 1, which, as all parties agree, changes the term of the contract from an indefinite one to one of at least three years, at least initially.  This provision refers to Defendant's "maint[enance of] its membership" in the warranty program "for an additional period of three (3) years," beginning on May 15, 2003, the date the Amendment was executed.  Paragraph 2 then says that the reduced "rate will remain in effect for the period of this Amendment" and that "the Amendment will renew for a like term, unless thirty (30) days prior to the expiration of this term or any extensions either party provides the other thirty (30) days advance written notice that they intend not to extend the period entitling the Builder to a lower rate."  In context, paragraph 2's reference to a "like term" reasonably appears to mean a renewal period equal to the initial three-year term.  In turn, if a party does not want to extend the Agreement (meaning terminate it) it may do so, as paragraph 2 expressly provides, by giving thirty-days notice before the expiration of "this term," the initial three-year period, or any subsequent "extensions," subsequent three-year terms.

       This interpretation gives effect to all the provisions while Defendants' interpretation ignores paragraph 2 completely, focusing instead on a termination provision that has been altered by the Amendment.

       Defendant asserts that Plaintiff's interpretation is wrong because paragraph 2 applies by its terms only to a decision to "no longer participate in the discount program," not a decision to terminate the Agreement.  (Doc. 36, Defendants' Br. in Supp. at p. 11).  Hence paragraph 2 does not limit the Agreement's termination provision.  We

think this argument flounders on the language of paragraph 2 requiring notice of termination thirty days before the end of the three-year period, regardless of the reason behind it. In any event, at this procedural stage of the case, we need not endorse Plaintiff's position. We need only decide that Eastwood Construction is not entitled to judgment on the pleadings.[2]

    B. *The Breach-of-Contract Claim Against Eastwood Homes*

In moving for judgment on the pleadings, Eastwood Homes makes essentially the same argument as Eastwood Construction. Eastwood Homes argues that the termination provision of the Agreement allowed it to terminate the contract on thirty-days notice. According to Eastwood Homes, the Addendum addresses only the "renewal of its participation in the QBW's discount program." (Doc. 36, Defendants' Br. in Supp. at p. 13). In fact, Defendant argues the Addendum is even less favorable to Plaintiff than the Amendment to Eastwood Construction's Agreement because unlike the Amendment, the Addendum "does not include a provision prohibiting Eastwood Homes from terminating the parties' business relationship during the Addendum's initial three-year period, or for any other period." (*Id.* at pp. 13-14).

---

[2] Defendants also argue the Amendment is ambiguous and therefore must be interpreted against Plaintiff, the drafter of the Amendment, and in favor of Eastwood Construction. However, if we were to apply this principle of law, Defendants' alternative explanation of the Amendment must be reasonable. *See Sun Co., Inc. (R&M) v. Pennsylvania Turnpike Comm'n*, 708 A.2d 875, 878-79 (Pa. Commw. Ct. 1998). That explanation does not seem to be reasonable as it ignores paragraph 2 of the Amendment.

We cannot grant Eastwood Homes judgment on the pleadings.  As Plaintiff points out, the Addendum provides that: (1) Defendant shall remain in the program for three years in consideration of receiving the reduced rate; (2) Defendant shall enroll all its homes "during this term and any extensions;" and (3) the "Addendum will renew for like terms" unless either party gives thirty-days notice that it does not intend "to extend the period entitling [Eastwood Homes] to a lower rate."  Defendant's interpretation of the Addendum ignores the part that appears to renew the Addendum for additional three-year periods unless timely notice is given before the end of each three-year term.

We will issue an appropriate order.[3]

   /s /William W. Caldwell  
William W. Caldwell  
United States District Judge

Date: December 28, 2011

---

[3] Plaintiff has argued that Defendants' motion should be denied because their conduct in continuing to enroll homes in the program indicates they did not actually terminate the agreements and hence they are estopped from asserting they have.  We reject this argument because it relies on matters that can not be considered on a motion for judgment on the pleadings.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

QUALITY BUILDERS WARRANTY :
CORPORATION, :
    Plaintiff :
     :
    v. : CIVIL NO. 1:CV-10-2500
     :
EASTWOOD CONSTRUCTION CO., INC. :
and EASTWOOD HOMES, INC., :
    Defendants :

*O R D E R*

AND NOW, this 28th day of December, 2011, it is ordered that Defendants' motion (Doc. 35) for judgment on the pleadings is denied.

                                     /s/ William W. Caldwell
                                     William W. Caldwell
                                     United States District Judge